**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:22-cr-00086-RDP-JHE-2** |
| | } | |
| **STERLING CORNELIUS DAVIS, III,** | } | |
| | } | |
| Defendant. | } | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the court on (1) Defendant Sterling Cornelius Davis's Motion to Suppress Evidence and Statements (Doc. # 45); (2) the Magistrate Judge's Report and Recommendation on Davis's Motion to Suppress ("R&R") (Doc. # 70); and (3) Defendant Davis's Objections to the R&R (Doc. # 71).

I.      **Background**

Davis, together with codefendant Ivan Betancourt, is charged with one count of possession with intent to distribute 500 or more grams of cocaine, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and one count of conspiracy related to that offense, a violation of 21 U.S.C. § 846. (Doc. # 1). Davis seeks to have the evidence against him suppressed on the grounds that officers violated his Fourth Amendment protections when they detained him for an unreasonable time during a traffic stop and searched the vehicle in which he was a passenger without probable cause. (Doc. # 45).

A review of the record shows that at about 3:45 a.m. on the morning of July 18, 2020, Officer Jessie Burttram, a relatively new police officer with the Steele, Alabama police department, was conducting a traffic stop on Interstate 59. As Officer Burttram began to open the

driver's side door to exit his patrol vehicle, a 2015 Mercedes Benz passed very close to his door in the lane next to his parked vehicle. Based on his belief that this violated Alabama's Move Over Act, Officer Burttram terminated his previous traffic stop, pursued the Mercedes, and pulled it over.

Officer Burttram engaged the driver, Betancourt, and early on in the stop during Betancourt's answers about who his passenger was and how he knew him were highly suspicious. Officer Burttram also determined that Betancourt's license was expired. Officer Burttram asked Betancourt to wait beside the car. He approached the Mercedes' passenger side and asked Davis for his ID, noting that Betancourt's license was expired and Davis might have to drive. Davis produced a non-driver ID card. Officer Burttram then called in a check on Davis's ID card and dispatch informed Officer Burttram that Davis's license was suspended.

Officer Burttram then asked Betancourt if there was anything illegal in the vehicle, and Betancourt denied having any contraband. Officer Burttram asked Betancourt for consent to search the Mercedes, but Betancourt shook his head. Officer Burttram then informed Betancourt that, since he had denied consent to search, "the next step" was to have a K9 unit come to the scene to sniff the vehicle; if the dog detected, Officer Burttram stated he would then search the vehicle "bumper to bumper."

By this point in time, Officer Wildinger had arrived on the scene. Officer Burttram related to Officer Wildinger his suspicions that "something's up" with the Mercedes and its occupants, and that Betancourt had not consented to a search. Officer Burttram called dispatch to request a K9 from Etowah County "as soon as possible."

Officer Burttram returned to the Mercedes and began to shine his flashlight into the vehicle. Officer Burttram stated to Davis that he had reasonable suspicion of criminal activity. Officer

Burttram also told Officer Wildinger that he "could see small pieces of bud, marijuana" in the Mercedes and asked Officer Wildinger if he could approach the vehicle to see if he could smell it. Officer Burttram also stated to Officer Wildinger that while a K9 was on the way, he was getting "a small whiff of marijuana" from the vehicle and had spotted marijuana on the center console. Both Betancourt and Davis denied that marijuana had been smoked in the Mercedes.

Officer Burttram called Officer Wildinger back over to his patrol car and asked him if he had seen the marijuana. Officer Wildinger replied that he could not really tell, but he had seen "dustings." Officer Burttram confirmed that that was what he had seen. Officer Burttram stated "I can get a small hint of it, so I'm— I mean, now that I've got up to the car, we're gonna . . . ." Officer Wildinger interjected, "That's all you need, right?" Officer Burttram ultimately concluded that he already had probable cause to search the vehicle and elected to search without waiting.

Officer Burttram informed Davis and Betancourt that he was searching the vehicle and had probable cause to do so based on the odor of marijuana and his visual observation of marijuana residue. As he searched the passenger seat, Officer Burttram stated, "Yep, there it is right there: green residue." Officer Burttram continued to point out green residue throughout the search, but all of the areas to which Officer Burttram pointed—including the initial reference—are off camera. Officer Burttram asked Officer Wildinger to confirm that the residue he identified was marijuana; Officer Wildinger confirmed that he could "see what [Officer Burttram was] talking about." Officer Burttram continued to search the Mercedes, ultimately uncovering packages containing 4,995 grams of cocaine.

The Magistrate Judge credited Officer Burttram's testimony that he did smell marijuana, and thus that he had probable cause to search the Mercedes. Therefore, he recommended that Davis's Motion to Suppress be denied.

3

## II.        Analysis of Davis's Objections

Davis has objected to (1) the Magistrate Judge's conclusion that Officer Burttram had reasonable suspicion to prolong the detention with unrelated inquiries pre- and post- the so-called *Rodriguez* moment,[1] and (2) the conclusion that Officer Burttram had probable cause to conduct a warrantless search of the vehicle. (Doc. # 71).

### A.        Reasonable Suspicion to Prolong the Detention

An investigative stop predicated on an observed traffic violation becomes unreasonable (and thus unlawful) if officers prolong it beyond the time reasonably required to issue a ticket for the violation. *Rodriguez*, 135 S. Ct. at 1614-15. However, an officer may extend the stop beyond the traffic stop's mission if he develops independent reasonable suspicion of other criminal activity. *United States v. Hernandez*, 418 F.3d 1206, 1209 (11th Cir. 2005).

Davis contends that most, if not all, of Officer Burttram's unrelated inquiries extended the stop beyond that necessary to accomplish the lawful purpose of the stop, issuing the traffic citation. Therefore, he argues, the prolonged detention was unreasonable and thus unlawful. The Magistrate Judge disagreed. So does this court.

An officer making a traffic stop may engage in "ordinary inquiries incident to the traffic stop . . . [such as] checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez* at 1615 (cleaned up). But this list is not exhaustive. "Generally speaking, questions about travel plans are ordinary inquiries incident to a traffic stop." *United States v. Campbell*, 26 F.4th 860, 885 (11th Cir. 2022) (citations omitted). These sorts of inquiries "'serve the same objective as enforcement of the traffic code' — namely, 'ensuring that vehicles on the road are operated safely

---

[1] *Rodriquez v. United States*, 135 S. Ct. 1609 (2015).

and responsibly' — [and] do not unconstitutionally extend the traffic stop. *United States v. Vargas*, 848 F.3d 971, 974 (11th Cir. 2017) (quoting *Rodriguez*, 135 S. Ct. at 1614–15). And, the Eleventh Circuit has held that an officer conducting a traffic stop may appropriately conduct a criminal history check on a vehicle's occupants for safety purposes during the course of that stop. *United States v. Purcell*, 236 F.3d 1274, 1278 (11th Cir. 2001).

The court agrees with the Magistrate Judge that, after Officer Burttram had discovered that Betancourt's license was expired, identifying Davis and determining whether Davis had a valid license was consistent with the need to ensure that a validly-licensed driver was available to drive the vehicle away. The court also agrees with the Magistrate Judge that Officer Burttram had reasonable suspicion to continue the stop at the point when it purportedly became prolonged.

The question is whether under the totality of the circumstances, taking all the facts together, there was reasonable suspicion of criminal activity. *Navarette v. California*, 572 U.S. 393, 397 (2014); *United States v. Arvizu*, 534 U.S. 266, 267 (2002). The following facts support reasonable suspicion at the point that the stop was "prolonged": (1) the Mercedes nearly struck Officer Burttram on the side of the road in the middle of the night; (2) there were multiple cellphones in the car; (3) the floorboard of the Mercedes had been pulled back; (4) the car had several air fresheners; (5) Betancourt gave suspicious answers about his destination; (6) Betancourt gave suspicious answers about Davis, including not knowing Davis's name; (7) Betancourt did not have a valid driver's license; (8) Davis was belligerent; (9) Davis did not have a valid driver's license; (10) there were signs of "hard travel," which Officer Burttram testified meant "someone that was traveling and making the least amount of stops as possible."; and (11) Betancourt was reluctant to answer questions and was perceived to be nervous. (Of course, as discussed below) as the stop continued, Officer Burttram also became aware of what looked like marijuana residue and what

5

smelled like marijuana odor. Therefore, the objection that there was not reasonable suspicion to prolong the stop is **OVERRULED**.

### B.        Probable Cause to Conduct a Warrantless Search

Police may search an automobile and the containers within it without a search warrant when they have probable cause to believe it contains contraband or evidence of criminal activity. *California v. Acevedo*, 500 U.S. 565, 580 (1991). Probable cause "exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006) (internal quotes and citation omitted).

Davis objects to the finding that Officer Burttram had probable cause to conduct a warrantless search of the vehicle. (Doc. # 71 at 3). Davis submits that the Magistrate Judge should not have credited Officer Burttram's testimony that he smelled the odor of marijuana coming from the car because it is inconsistent with Officer Wildinger's testimony that he did not smell the odor of marijuana. (*Id.*).

Credibility determinations are typically the province of the fact finder because it is the fact finder who personally observes the testimony and is in a better position than a reviewing court to assess the believability of witnesses. *Viehman v. Schweiker*, 679 F.2d 223, 227-28 (11th Cir.1982). That is, "we should defer to the magistrate judge's determinations unless his understanding of the facts appears to be 'unbelievable.'" *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (citing *United States v. Rivera,* 775 F.2d 1559, 1561 (11th Cir. 1985). The court finds nothing improbable about Officer Burttram's testimony, and that on the record the Magistrate Judge's credibility determination is not only entitled to deference but appears to be correct.

6

Therefore the objection that there was not probable cause to conduct a warrantless search is **OVERRULED**.

III.     **Conclusion**

After careful consideration of the record in this case, Davis's Motion to Suppress, the Magistrate Judge's Report and Recommendation, and Davis's objections thereto, the court (1) **OVERRULES** Davis's objections (Doc. # 71); (2) **ADOPTS** the Report of the Magistrate Judge (Doc. # 70); and (3) **ACCEPTS** the recommendations of the Magistrate Judge that Davis's Motion to Suppress be denied. Therefore, Davis's Motion to Suppress Evidence and Statements (Doc. # 45) is **DENIED**.

**DONE** and **ORDERED** this August 25, 2023.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE